**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

| | |
|---|---|
| **R.J. GATORS FRANCHISE SYSTEMS, INC.,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**M.B.C. RESTAURANTS, INC.,** a )<br>Florida corporation, )<br>)<br>)<br>)<br>Defendant ) <br>/ | **Case No.: 2:05-cv-00494-VMC-DNF** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, R.J. Gators Franchise Systems, Inc., pursuant to Local Rule 4.06, submits the following as its Memorandum in Support of its Motion for Preliminary Injunction:

**I.  PRELIMINARY STATEMENT**

Defendant's R.J. GATOR'S® franchise was terminated on September 1, 2005, for nonpayment of franchise and other fees.  At that time, Defendant's license to use the R.J. GATOR'S® trademark immediately ended and its obligation not to compete was triggered. Defendant nonetheless continues to operate a restaurant offering identical food under the R.J. GATOR'S® name and trademark.

Defendant's conduct is illegal as a matter of federal trademark law and a clear violation of the post-termination obligations of the parties' franchise agreement.  The present Motion seeks preliminary injunctive relief seeks preliminary injunctive relief to cease Defendant's unauthorized use of the federally-registered R.J. GATOR'S® trademark.  The Motion also seek enforcement of the covenant against competition in the franchise agreement.

**II.     FACTS**

The following facts are from the record Declarations of Reginald L. Timoteo and Teresa Joiner. The pertinent documents are attached as Exhibits to the Complaint and authenticated by Mr. Timoteo's Declaration. The photographs referenced herein are attached to Ms. Joiner's Declaration.

**A.     The R.J. GATOR'S® System and Marks**

Plaintiff is in the business of granting franchises to qualified persons to own and operate casual grill and bar restaurants under the trademark and name R.J. GATOR'S®. Plaintiff licenses to its franchisees the right to use its unique business format, system of operations, and attendant proprietary names and marks (the "**System**"). Plaintiff particularly uses the mark R.J. GATOR'S® to identify the source, origin and sponsorship of its authorized franchisees' restaurants and the goods and services offered by them. Plaintiff has given notice to the public of the registration of the R.J. GATOR'S® mark as provided in 15 U.S.C. § 1111, and Plaintiff and its franchisees have continuously used the R.J. GATORS® mark in retail commerce throughout the United States since October 27, 1986.

Quite obviously, the mark R.J. GATOR'S® is invaluable to Plaintiff and its franchisees. Plaintiff expends considerable resources developing, advertising, and promoting its System and the restaurants under the R.J. GATOR'S®, and the mark is consequently a principal source of trade identity with the consuming public. As with almost all business so strongly associated with a trademark, Plaintiff and its authorized franchisees' ability to grow and succeed depends directly on customer recognition of the System a Marks and the perception that the System offers uniformly known and outstanding restaurant goods and services.

**B.     Defendant's Franchise Agreement and License to Use the System and Marks**

The use of the Plaintiff's marks by its franchisees is closely regulated by written franchise agreements. In this specific instance, Plaintiff and Defendant, MBC Restaurants, Inc. ("**Defendant**") entered into a written Franchise Agreement (the "**Franchise Agreement**"), pursuant to which Plaintiff granted Defendant the right to operate a R.J. GATORS® restaurant at 4451 Palmetto Extension in Fort Myers, Florida (the "**Franchised Business**"), and a license to use the System and marks, including the mark "R.J. GATORS® in connection therewith.

In executing the Franchise Agreement, Defendant expressly acknowledged (i) that it would use Plaintiff's marks only in the manner prescribed by Plaintiff, and (ii) that Plaintiff has the "sole and exclusive right" to use the mark R.J. GATORS®, and that nothing in the Franchise Agreement "shall be construed to vest in the Franchisee any right, title or interest in or to the R.J. GATORS®" mark.. (See Franchise Agreement (attached to Complaint as Exhibit "A") § 2).

In the event of a termination or expiration of the Franchise Agreement, among other things, Defendant's right to use the System and Gators' Marks would cease immediately. (See Franchise Agreement § 23(a)(ii)). Defendant also agreed upon termination to abide by all restrictive covenants set forth in the Franchise Agreement, including those against competition. Specifically, in Section 27 of the Franchise Agreement, Defendants agreed that:

> …for a 24-month period after termination or expiration of this Agreement…[MBC] will not: (i) directly or indirectly, solicit or otherwise attempt to induce, by combining or conspiring with, or attempting to do so, or in any other manner influence any employee, officer, director…or other business contact of the Franchisor to terminate or modify his, her or its business relationship with the Franchisor or to compete against the Franchisor; (ii) directly or indirectly, as owner…be connected in any manner with the ownership…of a business similar to R.J. GATORS® Restaurants in appearance, ambiance or menu within 10 miles of the Site…

(See Franchise Agreement § 27). In effect, the Defendant agreed to not compete with Plaintiff or Plaintiff's franchisees after expiration of the Agreement using "information, knowledge, know-

3

how and technologies…including the R.J. GATOR'S Manuals and secret recipe products ...." (See id.).

### C. Termination of Defendant's Franchise Agreement

Defendant failed to remit certain royalty and advertising payments due under the Franchise Agreement. Therefore, and after ample warning and opportunity to cure, Plaintiff elected to terminate Defendant's franchise agreement. On September 1, 2005, Plaintiff delivered to Defendant a Final Notice of Termination dated September 1, 2005. (See Compl. Ex. "E"). This Final Notice of Termination reminded Defendant of its obligations upon termination, including specifically to remove its R.J. GATOR'S® signs and of the competitive restrictions relating to continued operation of a casual dining restaurant.

### D. Defendants' Infringement And Violation of the Noncompetition Covenant

Notwithstanding receipt of the Final Notice of Termination, Defendant illegally continues to use, and is using to this very day, the R.J. GATOR'S® mark in the operating of a casual dining restaurant identical in all respects to an authorized R.J. GATOR'S® restaurant (the "**Competing Business**") from the very same located as the Franchised Business. Defendant is therefore illegally marketing and promoting the Competing Business through the use of Plaintiff's marks, is fraudulently holding the Competing Business out to the public as an authorized R.J. GATORS® restaurant, and is representing the Competing Business and the unapproved goods an services offered by the Competing Business as being authorized by Plaintiff Gators when they most certainly are not.

Specifically, upon investigation, Plaintiff has determined that Defendant is using exterior and interior signage utilizing the R.J. GATOR'S® mark, is using menus bearing and making repeated reference and use the R.J. GATOR'S® marks, is serving identical foods, in an identical atmosphere, at the identical location of the Franchised Business. *Ipso facto*, upon recognizing

4

Plaintiff's mark, through Defendant's unauthorized use thereof, consumers will be deceived and likely conclude that Defendant's Competing Business, and the goods and services offered and sold in connection therewith, are subject to Plaintiff's supervision, are sponsored or endorsed by Plaintiff, and bear Plaintiff's Marks pursuant to Gators' authority and permission.

So long as Defendants continue to use Gators' Marks in connection with the operation of the Competing Business, consumers have no practical way of knowing that Defendant's Former Franchise is no longer affiliated with, sponsored, authorized or endorsed by Plaintiff. As a result, any consumer dissatisfaction with the Competing Business, or with the products and services offered in connection therewith, will be attributed to Plaintiff and legitimate R.J. GATORS® franchisees.

### III.   STANDARD OF REVIEW

In infringement actions, as in other cases, a plaintiff is entitled to preliminary injunctive relief upon establishing: (1) a substantial likelihood of success the plaintiff may prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if interlocutory injunctive relief is not granted; (3) that the threatened injury to plaintiff outweighs any threatened harm an injunction may do to defendant; and (4) that granting a preliminary injunction will not disserve the public interest. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)(citing All Care Nursing Services Inc. v. Bethesda Memorial Hospital, Inc., 887 F.2d 1535, 1537 (11th Cir. 1990)).

### V.   PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF AGAINST DEFENDANTS FOR VIOLATIONS OF THE LANHAM ACT

#### A.   Plaintiff Has a Substantial Likelihood of Success On the Merits

In enacting the Lanham Act, Congress' avowed purpose was "[t]o protect trademarks . . . to protect the public from deceit, to foster fair competition, and to secure to the business

community the advantages of reputation and goodwill by preventing their diversion from those who have created them to those who have not." See Truck Equipment Serv. Co. v. Fruehauf Corp., 536 F.2d 1210, 1215 (8th Cir. 1976)(quoting S. Rep. No. 1333, 1946 U.S. Code Cong. Serv. 1274, 1276).

The Lanham Act effects this purpose through two principal provisions: (i) Section 32(1), 15 U.S.C. § 1114(1), which proscribes trademark infringement by prohibiting the use of a reproduction of a registered mark; and (ii) Section 43(a), 15 U.S.C. § 1125(a), which prohibits, *inter alia*, false designations as to the source or origin of business establishments, services and goods. Under either section, the Lanham Act "creates a claim for trademark infringement when a trademark holder can demonstrate that the use of its trademark by another is likely to confuse consumers as to the source of the product." See Home Box Office, Inc. v. Showtime/The Movie Channel, Inc., 832 F.2d 1311, 1314 (2d Cir. 1987).

The critical inquiry in most Lanham Act cases is whether there is a likelihood of confusion, mistake or deception between the registered mark and the allegedly infringing mark. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983).[1] In this regard, it is well established that false suggestions of affiliation with a trademark owner are likely to cause confusion as to the source or sponsorship, that is, using marks without permission will constitute infringement. This is particularly true of a terminated franchisee's continued use of its former franchisor's trademarks:

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated Licensee continues to use the former franchisor's trademarks. A patron of a store adorned with the Burger King trademarks would

---

[1] Although the court in John M. Harland was discussing a Lanham Act Section 32(1), 15 U.S.C. §1114(1) claim, as a general rule the same facts which support a claim for trademark infringement also support a claim for unfair competition under Lanham Act Section 43(a), 15 U.S.C. § 1125(a). See, e.g., Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1010 (5th Cir. 1975); Rolex Watch U.S.A., Inc. v. Canner, 645 F. Supp. 484, 488 (S.D. Fla. 1986).

>believe that BKC endorses the operation of the store.  <u>Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated.  Any shortcomings of the [terminated] Licensee therefore would be attributed to BKC.</u>

<u>Burger King Corp. v. Mason</u>, 710 F.2d 1480, 1492-93 (11th Cir. 1983) [emphasis supplied].  <u>See also</u> <u>Ramada Inns, Inc. v. Gadsden Motel Co.</u>, 804 F.2d 1562, 1566 (11th Cir. 1986)(recognizing the premise that a franchisee's "holding over" is "not different than unlawfully using…marks from the beginning.")

In this case, the photographs attached to and testimony of the record Declaration of Theresa Joiner unmistakably evidence the infringing use of the R.J. GATOR'S® mark throughout the interior and exterior of the Competing Business, which is operated for nearly all intents and purposes identical to a legitimate R.J. GATOR'S® restaurant.  Thus, there can be no doubt, as in <u>Mason</u>, that Defendant's continued use of Plaintiff's mark subsequent to the termination is infringing and has caused, and will continue to cause, consumer confusion.

The leading commentator on this subject characterizes such continued, unauthorized use as a "fraud on the public" and further noted that such cases are "open and shut."  3 J. McCarthy, <u>Trademarks and Unfair Competition</u> §§ 23.3, 25.07[1] (3d ed. 1993).

In sum, the facts of this case present an overwhelming likelihood of consumer confusion.  Therefore, Plaintiff has more than a substantial likelihood of success on its claims under the Lanham Act.

**B.    Defendant's Continued Infringement of Gators' Marks Will Irreparably Injure Plaintiff**

Given Plaintiff's certainty of success on the merits, little more is needed to show that Plaintiff is entitled to injunctive relief.  The overwhelming likelihood of consumer confusion <u>alone</u> establishes, as a matter of law, Plaintiff's irreparable injury and entitlement to an injunction *pendente lite*.  <u>See</u> <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301, 1310 (11th Cir.

1998)(recognizing that a strong likelihood of confusion may by itself constitute a showing of a substantial threat of irreparable harm)(citing Power Test Petroleum Dist., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985)("irreparable injury exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial")); see also Sundor Brands, Inc. v. Borden, Inc., 653 F. Supp. 86, 93 (M.D. Fla. 1986)("The law is well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Fed. R. Civ. P. 65.").

Furthermore, the irreparable harm which Plaintiff is suffering, and will continue to suffer, is not only a legal presumption but a plain and simple fact.  Consistent with the principle that "uniformity of product and control of its quality cause the public to turn to franchise stores," Plaintiff exercises strict control over the use of its marks and the goods and services offered under those marks.  See Burger King Corp. v. Stephens, 1989 WL 147557, at *12 (E.D. Pa.)  If Plaintiff is unable to control Defendant's service of inferior, non-conforming and potentially harmful products under its marks, then the marks are tarnished and Plaintiff's name and goodwill are immeasurably harmed:

> McDonald's faces damages to its own reputation and loss of customers caused by [franchisee's] distribution of an allegedly inferior (and possibly dangerous) product held out to be McDonald's.  Customers would believe that they were eating McDonald's sanctioned products when they consumed improperly cooked and unsanitarily maintained food products from the [franchisee's] store.  We can conceive of no realistic way to determine the damages under these circumstances.

McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998).

    **C.**    **The Injury to Plaintiff Greatly Outweighs Any Threatened Harm to Defendant**

As a willful infringer, Defendant is entitled to little equitable consideration.  "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner."  Krause Int'l, Inc. v. Reed Elsevier, Inc., 866 F. Supp. 585, 587-88

(D.D.C. 1994). Plainly, that is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he had no claim to the profits or advantages thereby derived." Burger King Corp. v. Majeed, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)(quoting American Home Products Corp. v. Johnson Chemical Corp., 589 F.2d 103, 107 (2d Cir. 1978)). The balance of harms, as such, "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." Malarkey-Taylor Assoc., Inc. v. Cellular Telecommunications Indus. Ass'n, 929 F. Supp. 473, 478 (D. D.C. 1996).

In this case, the only "harm" that will come to Defendant if it is enjoined from infringing upon Plaintiff'sMarks will be the cessation of its illegal conduct. In circumstances such as this– where any harm visited upon an enjoined party is the result of their own malfeasance -- Defendant simply has no equitable standing to complain should their infringement be enjoined. See Majeed, 805 F. Supp. at 1006 ("Defendants' self inflicted harm is far outweighed by the immeasurable damages done [plaintiff] by the infringement of its Marks.").

### D. The Public Interest Will be Furthered By Enjoining Defendant's Lanham Act Violations

Entry of a preliminary injunction will further the public interest because "it is in the public interest for the Court to prevent public confusion over the source or origin of products provided to the public." Malarkey-Taylor Assocs., Inc., 929 F. Supp. at 478 (D. D.C. 1996). Indeed, in Sundor Brands, this Court stated:

> In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount. Indeed, when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation.

653 F. Supp. 86, 93 (M.D. Fla. 1986).

In this case, the injury to the public is patent, and the injunctive relief requested by Plaintiff, with regard to Defendant's Lanham Act violations, is <u>specifically</u> intended to remedy that injury by dispelling the public confusion created by Defendant's actions. The public has a right not to be confused or defrauded as to the source of the goods and services offered by Defendant, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Thus, unless enjoined, Defendant's unauthorized use of Gators' Marks will continue to confuse and mislead the public. <u>See also</u> <u>Burger King v. Hall</u>, 770 F. Supp. 633, 640 (S.D. Fla. 1991)("The public will be protected and secure in their knowledge that when they patronize a store which utilizes the Burger King trademarks, service marks, and other logos, that store is properly licensed and authorized and franchised Burger King store.").

**IV.     PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF AGAINST DEFENDANT FOR VIOLATING THE FRANCHISE AGREEMENT'S COVENANT AGAINST COMPETITION.**

The covenant against competition at issue in this case prohibits the operation of a "business similar to an R.J. GATOR'S® Restaurant[] in appearance, ambiance or menu" within 10 miles for a period of 24 months. (<u>See</u> Franchise Agreement § 27). Notwithstanding this provision, and Plaintiff's demand for compliance in the Final Notice of Termination, Defendant has continued to engage in the business of offering identical goods and services from the same location as the Franchised Business, using Plaintiff's marks and Plaintiff's System, all without any license to do so. As shown below, there is a substantial likelihood of Plaintiff's success on its claim for injunctive relief to enforce the restrictive covenant and the other requisites of injunctive relief are proven. Thus, a preliminary injunction should issue enjoining Defendant's competition within the geographic and temporal limits established by the Franchise Agreement.

### A. The Restrictive Covenant Is Temporally And Geographically Reasonable and Acts to Protect Plaintiff's Legitimate Business Interests.

Florida law specifically recognizes covenants not to compete arising from franchise or license agreements so long as they are reasonably limited as to time and area and further a "legitimate business interest." Florida Statutes § 542.33(1)(b); see Franchise Agreement § 45 (providing the Florida law shall govern). A "legitimate business interest" specifically includes the protection of trade secrets, confidential business information, and goodwill associated with a trademark, service mark or trade dress." See § 542.335(1)(b), Fla. Stat. (2004). Florida law also provides that the breach of an enforceable restrictive covenant creates a presumption of irreparable injury, and that injunctive relief is an appropriate remedy for such a breach. See § 542.335(j) Fla. Stat. (2004).

First, the *de minimus* temporal and geographic restrictions of ten miles for a period of two years have been held reasonable and enforceable under Florida law. See Supinski v. Omni Healthcare, P.A., 853 So.2d 526 (5th DCA 2003)(affirming the grant of an injunction enforcing a noncompetition covenant prohibiting a doctor from practicing medicine for 2 years within 10 miles of any clinic operated by his former employer); Graphic Business Systems, Inc. v. Rogge, 418 So. 2d 1084 (Fla. 2d DCA 1982) (finding two-year time restriction reasonable and upholding 75-mile radius geographic restriction); Dyer v. Pioneer Concepts, Inc., 667 So. 2d 961 (Fla. 2d DCA 1996) (finding geographic restriction of 100-mile radius operating in more than 5 separate counties reasonable).

Second, Plaintiff has several 'legitimate business interests' which are protected by enforcement of the restrictive covenant. Foremost, Plaintiff requires protection of its trademarks, service marks and trade dress, and the good will associated therewith. See § 542.335(1)(b)(4)(a), Fla. Stat. (2004)(providing that a legitimate business interest includes protecting a trademark and

11

goodwill associate with it). Defendant's continued use of the Plaintiff's marks, most notably the registered mark R.J. GATORS®, is destroying the goodwill that Plaintiff has arduously accumulated. If the noncompetition covenant in the Franchise Agreement is not enforced by this Court, Defendant will erode the goodwill associated with legitimate members Plaintiff's franchise System and marks. Additionally, Plaintiff has a legitimate business interest in protecting against Defendant's unauthorized use of confidential information obtained through the franchise relationship. In Section 27 of the Franchise Agreement, Defendant agreed to not compete with Plaintiff or Plaintiff's franchisees after expiration of the Agreement using "information, knowledge, know-how and technologies…including the R.J. GATORS Manuals and secret recipe products." Florida law, of course, recognizes a "legitimate business interest" in protecting against the unauthorized use of "valuable confidential business or professional information," even if such information does not rise to the level of a 'trade secret' per se. See § 542.335(1)(b)(2), Fla. Stat. (2005).

Accordingly, there can be no question that the noncompetition covenant at issue in this litigation is reasonable in time and area and is intended to, and in fact, promotes and protects the legitimate business interests of Plaintiff.

### B. Defendants' Breach of the Covenant Not to Compete is Causing Irreparable Harm

In the Eleventh Circuit, irreparable harm is virtually presumed when one has violated a restrictive covenant. The Eleventh Circuit deems injunctions the normal and favored remedy for violations of restrictive covenants because monetary damages are typically quite difficult to establish and often cannot adequately compensate for that type of breach. See Ferrero v. Assoc. Materials, Inc., 923 F.2d 1441, 1448-1449 (11th Cir. 1991)(federal procedure, which presumes injunction is appropriate remedy for breach of covenant not to compete, applies in determining

appropriateness of injunctive relief under Federal Rule of Civil Procedure 65); see also <u>Spiegel v. City of Houston</u>, 636 F.2d 997 (5th Cir. 1981)(loss of customers and goodwill is an "irreparable injury" under Rule 65); <u>Capraro v. Lanier Business Prods., Inc.</u>, 466 So. 2d 212, 213 (Fla. 1985)(irreparable injury may be presumed upon breach of a valid covenant not to compete).

Irreparable injury in this case is a matter of plain and simple fact: (1) enforcement of the noncompete is essential to allow time for the public's association of Defendant's business with Plaintiff's Mark and system of franchised R.J. GATOR'S® restaurants to dissipate; (2) if Defendant is not enjoined, Plaintiff will be effectively unable to re-enter the Fort Myers market, causing Gators to lose sales, goodwill, and the market presence it enjoys; (3) Defendant's conduct threatens Plaintiff's franchise system as a whole -- if not enjoined Defendant's conduct readily implies that the Franchise Agreement does not protect Plaintiff, and may be disregarded at will.

        **C.**    **The Continuing Injury to Plaintiffs Greatly Outweighs the Harm To Defendants**

Any harm to Defendant by the issuance of a preliminary injunction enforcing the noncompetition covenant is entirely of their own making. Defendant freely entered into the franchise relationship and has enjoyed its benefits for many years. Now, Defendant blatantly flouts the terms of the covenant not to compete by operating a Competing Business that offers the identical goods and services as R.J. GATORS® restaurants from the exact same location.

The covenant not to compete does not impose any undue hardship on Defendant as they are free to use their familiarity with the customers they previously serviced as a R.J. GATORS® franchisee outside of a ten (10) mile radius of the Former Franchise for twenty-four (24) months, and anywhere after that time. Clearly, however, the harm to Gators would be substantial if the Court does not require Defendant to comply with the covenant not to compete. Gators would be

hard pressed to find a franchisee willing to operate a R.J. GATORS® franchise in the very same area as, and in direct competition with, Defendant's Competing Business, which already enjoys a large customer base due to the superior service provided to customers at times the Competing Business operated as a R.J. GATORS® franchise.  The customer base Defendant benefits from in operating the Competing Business was developed in large part from the substantial investment Gators makes in the Gators' Marks, and the System.  The harm being visited upon Plaintiff, therefore, due to Defendant's flouting disregard of its post-termination obligations and mimicry of legitimate R.J. GATOR'S® restaurants is irreparable and incapable of remedy by a money damages award.

        **D.**     **The Public Interest Is Served By Injunctive Relief**

The public interest will not be disserved by the entry of a preliminary injunction.  On the contrary, there is a benefit to the enforcement of a valid covenant not to compete and encouraging people to adhere to contractual obligations.  <u>Burger King Corp. v. Lee</u>, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991)("The public interest is certainly disserved by Defendant's continuing disregard of his contractual commitments and undertakings.")

**V.**     **AMOUNT OF INJUNCTION BOND**

Rule 65(c) of the Federal Rules of Civil Procedure provides that a party seeking a preliminary injunction shall post a bond in an amount to be determined by the court, to secure the adverse party for costs and damages if it is ultimately found that the injunction was entered improvidently.  The amount of the injunction bond is within the sound discretion of the trial court.  <u>Carillon Importers, Ltd. v. Frank Pesce Int'l Group, Ltd.</u>, 112 F.3d 1125, 1127 (11th Cir. 1997).

To secure the non-competition injunction sought, and in light of the strength of its showing above,  Plaintiff suggests a bond in the amount of $10,000.00.  Likewise, its trademark

trademark infringement case is "open and shut," and Plaintiff suggests a bond in the amount of $1,000.00 to secure any injury to Defendant as a result of it being improperly enjoined. See, e.g., Two Men and a Truck/Int'l, Inc. v. Two Men and a Truck/Kalamazoo, Inc., 1995 WL 549278 (W.D. Mich. 1995).

## VI.  CONCLUSION

Plaintiff is plainly entitled to preliminary injunctive relief against Defendant enjoining it from illegally using Plaintiff's marks, including "R.J. GATOR'S®." Furthermore, Defendant is blatantly disregarding the noncompetition covenant in the Franchise Agreement, and should be enjoined from further violation. Accordingly, Plaintiff respectfully requests that the Court enter its Preliminary Injunction in the form included with its moving papers.

>Respectfully submitted,
>
>s/Christian C. Burden
>Christian C. Burden
>Florida Bar No. 0065129
>**DLA PIPER RUDNICK GRAY CARY U.S. LLP**
>101 E. Kennedy Boulevard, Suite 2000
>Tampa, Florida 33602
>813.229-2111 phone
>813.229-1447 facsimile
>Attorneys for Plaintiff