**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

| | |
|---|---|
| **R.J. GATORS FRANCHISE SYSTEMS, INC.,** ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **MBC RESTAURANTS, INC.,** a ) <br> Florida corporation, ) <br> ) <br> ) <br> ) <br> Defendant. ) <br> / | **Case No.: 2:05-cv-00494-VMC-DNF** |

**PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court on Plaintiff's Motion for Preliminary Injunction [DKT 2]. Oral argument on the Motion for Preliminary Injunction took place before the undersigned on November 9, 2005. The Court has reviewed the Motion, Memorandum In Support, Declarations, and the record as a whole, makes the following **FINDINGS OF FACT**:

1. Plaintiff, R.J. Gators Franchise Systems, Inc., is engaged in the business of operating and granting franchises to qualified persons to operate R.J. GATORS® restaurants. Gators licenses to its franchisees a distinct and uniform system (the "**System**") relating to the establishment and operation of R.J. GATOR'S® restaurants.

2. To identify the source, origin and sponsorship of R.J. GATOR'S® restaurants and the goods and services they offer, and to distinguish those restaurants from those established, made, offered and sold by others, Plaintiff has extensively used certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including but not limited to the name and mark R.J. GATORS® ("**Plaintiff' Marks**").

3. Plaintiff has given notice to the public of the registration of the mark R.J. GATOR'S® as provided in 15 U.S.C. § 1111, and Plaintiff and its licensees have continuously used the mark in interstate commerce throughout the United States since October 27, 1986.

4. The System and Plaintiff' Marks are valuable to Plaintiff and its numerous franchisees. Plaintiff expends considerable resources developing, advertising, and protecting its System and the Plaintiff' Marks. Plaintiff ability to grow and succeed depends directly on customer recognition of the System and Plaintiff' Marks and the perception that the System offers uniformly known and outstanding restaurant goods and services.

5. Pursuant to Franchise Agreements entered into between Plaintiff and its franchisees, Plaintiff grants franchises to qualified persons to own and operate R.J. GATOR'S® restaurants using Plaintiff' Marks and the System, but only in such manner and at such locations as are expressly authorized by it.

6. On December 1, 1998, Plaintiff and Defendant entered into a written Franchise Agreement (the "**Franchise Agreement**"), pursuant to which Plaintiff granted Defendant the right to operate a R.J. GATOR'S® restaurant at 4451 Palmetto Extension in Ft. Myers, Florida, and a license to use the System and Plaintiff' Marks in connection therewith.

7. In executing the Franchise Agreement, Defendant expressly acknowledged that: (i) that they would use only Plaintiff' Marks designated by Plaintiff and use them only in the manner prescribed by Plaintiff, and (ii) that Plaintiff has the "sole and exclusive right" to use the mark R.J. GATORS®, and that nothing in the Franchise Agreement "shall be construed to vest in the Franchisee any right, title or interest in or to the R.J. GATOR'S®" marks.

8. In Section 23 of the Franchise Agreement, Defendant agreed that upon expiration or termination of the Franchise Agreement, among other things, Defendant would: (i) immediately pay all sums due and owing to Plaintiff, (ii) forfeit any right to use the System and Gators' Marks, (iii) return to Plaintiff all manuals and other System materials, (iv) immediately cease holding itself out as a Plaintiff franchisee, and (v) remove all signage or other paraphernalia identifiable with the "R.J. GATOR'S® name or image."

9. In Section 27 of the Franchise Agreement, Defendant agreed:

…for a 24-month period after termination or expiration of this Agreement…[MBC] will not: (i) directly or indirectly, solicit or otherwise attempt to induce, by combining or conspiring with, or attempting to do so, or in any other manner influence any employee, officer, director…or other business contact of the Franchisor to terminate or modify his, her or its business relationship with the Franchisor or to compete against the Franchisor; (ii) directly or indirectly, as owner…be connected in any manner with the ownership…of a business similar to R.J. GATORS® Restaurants in appearance, ambiance or menu within 10 miles of the Site…

In sum, the Defendant agreed to not compete with Plaintiff or Plaintiff's franchisees after expiration of the Agreement using "information, knowledge, know-how and technologies…including the R.J. GATOR'S Manuals and secret recipe products."

10. On September 1, 2005, Plaintiff terminated the Franchise Agreement by written notice to Defendant.

11. Notwithstanding receipt of the Final Notice of Termination, Defendant continued to use Plaintiff' Marks in connection with the operation of a restaurant featuring restaurant goods and services (the "**Competing Business**"), to market and promote the Competing Business through the use of Plaintiff's Marks, to hold the Competing Business out to the public as an authorized R.J. GATOR'S® restaurant, and to represent the Competing Business and the

unapproved products offered by the Competing Business as being authorized by Plaintiff when they are not.

13. Specifically, Defendant is operating its Competing Business, from the same location as their former R.J. GATOR'S® restaurant, utilizing the same signage, menus, furnishings, and other indicia of sponsorship and branding as when it had been an authorized franchisee of Plaintiff.

13. Defendant's use of Plaintiff' Marks has caused or is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation and sponsorship. Because Plaintiff, its system of franchisees and Defendant offer identical or nearly identical goods and services at their restaurants, the goods and services provided by Defendant using Plaintiff's Marks are offered to the same class of consumers as those who patronize authorized R.J. GATOR'S® restaurants. Upon recognizing Plaintiff' Marks, consumers will be deceived and likely conclude that Defendant's Competing Business, and the goods and services offered and sold in connection therewith, are subject to Plaintiff' supervisions, are sponsored or endorsed by Plaintiff and bear Plaintiff's Marks pursuant to Plaintiff's authority and permission.

14. So long as Defendant continues to use Plaintiff' Marks in connection with the operation of the Competing Business, consumers have no practical way of knowing that Defendant's restaurant is no longer affiliated with, sponsored, authorized or endorsed by Plaintiff. As a result, any consumer dissatisfaction with the Competing Business, or with the goods and services offered in connection therewith, will be attributed to Plaintiff, and the entire network of authorized R.J. GATORS® franchises.

**ACCORDINGLY,** based on the foregoing findings, the Court makes the following **CONCLUSIONS OF LAW**:

### LANHAM ACT CLAIMS

15. In infringement actions, as in other cases, a plaintiff is entitled to preliminary injunctive relief upon establishing: (1) a substantial likelihood of success the plaintiff may prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if interlocutory injunctive relief is not granted; (3) that the threatened injury to plaintiff outweighs any threatened harm an injunction may do to defendant; and (4) that granting a preliminary injunction will not disserve the public interest.  See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)(citing All Care Nursing Services Inc. v. Bethesda Memorial Hospital, Inc., 887 F.2d 1535, 1537 (11th Cir. 1990)).

16. Plaintiff has shown that it has a substantial likelihood of success on the merits for their Lanham Act claims of trademark infringement and unfair competition under the 15 U.S.C. §§ 1114(1) & 1125(a).  The evidence shows that notwithstanding termination of Defendant's license to use Plaintiff' trademarks and trade names, Defendant and its agents and representatives have continued to use those names and marks., and particularly made unauthorized use of the R.J. GATORS® mark.

17. The critical inquiry in most Lanham Act cases is whether there is a likelihood of confusion, mistake or deception between the registered mark and the allegedly infringing mark. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983).  In this regard, it is well established that false suggestions of affiliation with a trademark owner are likely to cause confusion as to the source or sponsorship, that is, using marks without permission

will constitute infringement. This is particularly true of a terminated franchisee's continued use of its former franchisor's trademarks:

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated Licensee continues to use the former franchisor's trademarks. A patron of a restaurant adorned with the Burger King trademarks would believe that BKC endorses the operation of the restaurant. <u>Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the [terminated] Licensee therefore would be attributed to BKC.</u>

<u>Burger King Corp. v. Mason</u>, 710 F.2d 1480, 1492-93 (11th Cir. 1983).

18. The overwhelming likelihood of consumer confusion <u>alone</u> establishes, as a matter of law, Gators' irreparable injury and entitlement to an injunction *pendente lite*. <u>See</u> <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301, 1310 (11th Cir. 1998)(recognizing that a strong likelihood of confusion may by itself constitute a showing of a substantial threat of irreparable harm)(citing <u>Power Test Petroleum Dist., Inc. v. Calcu Gas, Inc.</u>, 754 F.2d 91, 95 (2d Cir. 1985)("irreparable injury exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial")); <u>see also</u> <u>Sundor Brands, Inc. v. Borden, Inc.</u>, 653 F. Supp. 86, 93 (M.D. Fla. 1986)("The law is well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Fed. R. Civ. P. 65.").

19. Plaintiff is suffering irreparable harm. Consistent with the principle that "uniformity of product and control of its quality cause the public to turn to franchise[s]," Plaintiff exercises strict control over the use of Plaintiff' Marks and the goods and services offered under those marks. <u>See</u> <u>Burger King Corp. v. Stephens</u>, 1989 WL 147557, at *12 (E.D. Pa.) If Plaintiff is unable to control Defendant's service of inferior, non-conforming and

potentially dangerous products under Plaintiff' Marks, then the marks are tarnished and Plaintiff' name and goodwill are immeasurably harmed"

> McDonald's faces damages to its own reputation and loss of customers caused by [franchisee's] distribution of an allegedly inferior (and possibly dangerous) product held out to be McDonald's. Customers would believe that they were eating McDonald's sanctioned products when they consumed improperly cooked and unsanitarily maintained food products from the [franchisee's] store. We can conceive of no realistic way to determine the damages under these circumstances.

McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998).

20. Entry of a preliminary injunction will further the public interest because "it is in the public interest for the Court to prevent public confusion over the source or origin of products provided to the public." Malarkey-Taylor Assocs., Inc., 929 F. Supp. at 478 (D. D.C. 1996). In Sundor Brands, this Court stated:

> In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount. Indeed, when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation.

653 F. Supp. 86, 93 (M.D. Fla. 1986).

### RESTRICTIVE COVENANT CLAIM

21. Under Florida law, a covenant not to compete is valid if it is reasonably limited in time and area, and furthers a "legitimate business interest." See § 542.33(1)(b), Fla. Stat. (2004).

22. Florida law particularly recognizes covenants not to compete arising from franchise or license agreements so far as they are reasonably limited as to time and area, and further a "legitimate business interest." § 542.33(1)(b), Fla. Stat. (2004). A "legitimate business interest," specifically includes the protection of trade secrets, confidential business information, and goodwill associated with a trademark, service mark or trade dress (emphasis added). See §

542.335(1)(b), Fla. Stat. (2004).  Florida law also provides that the breach of an enforceable restrictive covenant creates a presumption of irreparable injury, and that injunctive relief is an appropriate remedy for such a breach.  See § 542.335(j) Fla. Stat. (2004).

23. The non-compete covenant at issue restricts Defendant from operating a competing business within ten (10) miles of the Former Franchise for a period of twenty-four (24) months.  These are reasonable temporal and geographic restrictions.  See Supinski v. Omni Healthcare, P.A., App. 5 Dist., 853 So.2d 526 (2003)(affirming the grant of an injunction enforcing a noncompetition covenant prohibiting a doctor from practicing medicine for 2 years within 10 miles of any clinic operated by his former employer); Graphic Business Systems, Inc. v. Rogge, 418 So. 2d 1084 (Fla. 2d DCA 1982) (finding two-year time restriction reasonable and upholding 75-mile radius geographic restriction); Dyer v. Pioneer Concepts, Inc., 667 So. 2d 961, 965 (Fla. 2d DCA 1996) (finding geographic restriction of 100-mile radius operating in more than 5 separate counties reasonable).

24. Plaintiff's legitimate business interests which are served and promoted by the subject restrictive covenant include, at least, protection of: (1) trademarks, service marks and trade dress and the goodwill associated therewith, and (2) valuable confidential information belonging to the Plaintiff.  See § 542.335(1)(b)(2), (4), Fla. Stat. (2005).

25. The Eleventh Circuit deems injunctions the normal and favored remedy for violations of restrictive covenants because monetary damages are typically quite difficult to establish and often cannot adequately compensate for that type of breach.  See Ferrero v. Assoc. Materials, Inc., 923 F.2d 1441, 1448-1449 (11th Cir. 1991).

26.     Enforcement of the noncompete is essential to allow time for the public's association of Defendant's business with Plaintiff' to dissipate, and if Defendant is not enjoined, Plaintiff will be effectively unable to re-enter the market formerly serviced by Defendant's franchise, causing Plaintiff to lose sales, goodwill, and the market presence it enjoys in the Ft. Myers area.  In additional Defendant's conduct threatens the Plaintiff franchise system as a whole; if not enjoined Defendant's conduct sends a message that the Franchise Agreement does not protect Plaintiff and may be disregarded at will.

27.     Finally, the public interest will not be disserved by the entry of a preliminary injunction.  On the contrary, there is a benefit to the enforcement of a valid covenant not to compete and encouraging people to adhere to contractual obligations.  Burger King Corp. v. Lee, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991)("The public interest is certainly disserved by Defendant's continuing disregard of his contractual commitments and undertakings.")

**ACCORDINGLY**, it is **ORDERED** that Plaintiff's Motion for Preliminary Injunction is **GRANTED**, and upon Plaintiff's posting of a good and sufficient bond in the amount of $11,000.00, Defendant, M.B.C. Restaurants, Inc., its agents, servants and employees, and those people in active concert or participation with it who receive actual notice of this Preliminary Injunction, by personal service or otherwise, be and they **ARE HEREBY RESTRAINED AND ENJOINED FROM**:

>   A.   Using Plaintiff's marks or any trademark, service mark, logo or trade name that is confusingly similar to the R.J. GATOR'S® mark;
>
>   B.   Otherwise infringing Plaintiff's marks or using any similar designation, alone or in combination with any other components;

      C.    Passing off any of their products or services as those of Plaintiff and/or its authorized franchisees;

      D.    Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of its businesses, products or services as being Plaintiff's and/or its authorized franchisees;

      E.    Causing a likelihood of confusion or misunderstanding as to its affiliation, connection or association with Plaintiff and its authorized franchisees or any of Plaintiff's products or services; and

      F.    Unfairly competing with Plaintiff or its franchisees in any manner.

**FURTHER,** Defendant, M.B.C. Restaurants, Inc., its agents, servants and employees, and those people in active concert or participation with it who receive actual notice of this Preliminary Injunction, by personal service or otherwise, be and they **ARE HEREBY RESTRAINED AND ENJOINED FROM** either directly or indirectly as a proprietor, partner, investor, shareholder, director, officer, employee, principal, agent, advisor, tenant, or consultant engaging in any other business located within a ten (10) mile radius of the formerly franchised business's location of 4451 Palmetto Extension in Ft. Myers, Florida which business offers or sells food and/or provides restaurant services similar to an R.J. GATOR'S® Restaurant in appearance, ambiance or menu.

**FURTHER,** Defendant, M.B.C. Restaurants, Inc., shall take any and all necessary steps to cancel any telephone numbers associated with Plaintiff or Plaintiff's Marks

**FURTHER,** Defendant, M.B.C. Restaurants, Inc., shall, in no later than 10 days time, deliver to Plaintiff, at Defendant's cost, all labels, signs, prints, packages, wrappers, receptacles,

uniforms, logo items, and advertisements in the possession of Defendant, its affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with it, bearing Plaintiff's Marks, and all plates, molds, and other means of making the same.

**FURTHER,** Defendant, M.B.C. Restaurants, Inc., shall, in no later than 10 days time, eliminate its advertising under Plaintiff's Marks, or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at Defendant's cost.

**FURTHER,** Defendant, M.B.C. Restaurants, Inc., is directed to file with the Court and to serve upon Plaintiff's counsel within thirty (30) days, a written report, under oath, setting forth in detail the manner in which it has complied with such injunction or order.

**FURTHER,** the terms of this Order shall take effect on November 14, 2005, at 5:00 P.M. unless Defendant hires an attorney and such attorney submits a filing that causes this Court to find that further action, such as noticing an additional hearing, is required.

**FURTHER**, the terms of this Order shall remain in effect unless and until modified by further order of this Court.

**DONE AND ORDERED**, at Ft. Myers, Florida, this 9th day of November, 2005.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Parties of Record